# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ALAN DONALDO** | § | **EP-24-CR-00706-DCG (1)** |
| **MARTINEZ-VASQUEZ,** | § | |
| | § | |
| *Defendant.* | § | |

## ORDER DENYING APPLICATION FOR ISSUANCE OF WITNESS SUBPOENA

The above-captioned criminal case is set for a *de novo* detention hearing on August 21, 2024.[1] Defendant Alan Donaldo Martinez-Vasquez asks the Court to issue a subpoena commanding the Government's case agent to testify at that hearing.[2] The Court **DENIES** Defendant's Application[3] for the following reasons.

---

[1] *See* Order Granting Mot. *De Novo* Detention Hr'g, ECF No. 45, at 1; Order Resetting Hr'g, ECF No. 60, at 1.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, not the document's internal pagination.

[2] 2d Am. Appl., ECF No. 57, at 3–4, 7.

[3] Defendant refers to his subpoena request as a "Motion" rather than an "Application." *See id.* at 1. Although that places Defendant in good company, *see, e.g.*, *United States v. Hegwood*, 562 F.2d 946, 952 (5th Cir. 1977) ("The decision to grant or deny a Rule 17(b) *motion* is vested in the sound discretion of the trial court." (emphasis added)), the Court will call Defendant's request an "Application" to track the language in the governing rule, *see* FED. R. CRIM. P. 17(b) ("Upon a defendant's ex parte *application* . . . ." (emphasis added)).

# I.    BACKGROUND

The Government charges Defendant with violating 18 U.S.C. § 111(a)(1) by allegedly spitting on a Border Patrol Agent identified as "C.M.G."[4]

The Government has moved to detain Defendant without bond pending trial.[5]  According to the Government, the nature of Defendant's alleged offense justifies detaining Defendant to ensure the community's safety.[6]  The Government further maintains that Defendant "presents a high risk of fleeing the jurisdiction to avoid prosecution" because he's a foreign national who

---

[4] Indictment, ECF No. 13, at 1; *see also* Camarillo Aff., ECF No. 1, at 2–3.

*See also* 18 U.S.C. § 111(a)(1) (making it a crime to "forcibly assault[], resist[], oppose[], impede[], intimidate[], or interfere[] with" certain federal officers and employees while they are "engaged in . . . the performance of official duties"); *United States v. Lehi*, 446 F. App'x 96, 100 (10th Cir. 2011) (holding that spitting on a federal officer qualifies as "a forcible assault involving physical contact in violation of 18 U.S.C. § 111(a)").

[5] Mot. Detain, ECF No. 2, at 1–2.

*See also* 18 U.S.C. § 3142(f)(1)–(2) (identifying circumstances in which the Government may move to detain a defendant pending trial); *id.* § 3142(e)(1) ("If, after a hearing . . . the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial.").

[6] *See* 18 U.S.C. § 3142(g)(4) (requiring a court, when considering whether to release a defendant on bond, to consider "the nature and seriousness of the danger to any person or the community that would be posed by the person's release"); Mot. Detain at 1 (arguing that "[t]here are no conditions or combination of conditions which w[ould] reasonably assure the safety of the community should the Defendant be released on bond").

*See also* 18 U.S.C. § 3142(g)(1) (requiring a court, when deciding whether to detain a defendant pending trial, to consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence"); Mot. Detain at 1 (characterizing Defendant's alleged offense as "a crime of violence").

The Court does not now decide whether Defendant's alleged offense qualifies as a "crime of violence" as the Government contends.

"cannot demonstrate sufficient employment, length of residence in the community, or community ties" that would discourage him from absconding.[7]

On July 11, 2024, U.S. Magistrate Judge Miguel A. Torres held a hearing to decide whether to detain or release Defendant pending trial.[8]  At the conclusion of that hearing, Judge Torres released Defendant on bond.[9]

The Government then moved to stay Judge Torres's ruling and set the case for a *de novo* detention hearing before a District Judge.[10]  I granted the Government's Motion and scheduled the *de novo* detention hearing for August 21, 2024.[11]

---

[7] *See* Mot. Detain at 1; *see also* Detention Hr'g Tr., ECF No. 48, at 6 (noting that Defendant is from Guatemala).

*See also* 18 U.S.C. § 3142(g)(3) (requiring a court, when deciding whether to detain a defendant pending trial, to consider the defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings").

[8] *See* Detention Hr'g Tr. at 1.

*See also* 18 U.S.C. § 3142(f) (listing circumstances in which the presiding "judicial officer [must] hold a hearing to determine whether any condition or combination of conditions . . . will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community").

[9] *See* Detention Hr'g Tr. at 8 ("Bond is set at $20,000, 10 percent.").

[10] *See* Mot. Review Bond Decision, ECF No. 44.

*See also* 18 U.S.C. § 3145(a) ("If a person is ordered released by a magistrate judge . . . the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release . . . ."); *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) ("When the district court acts on a motion to revoke or amend a [Magistrate Judge]'s pretrial detention order, the district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions for release." (citing *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985))).

[11] *See* Order Granting Mot. Review Bond Decision; *see also supra* note 1 and accompanying text.

Defendant has now applied for a subpoena commanding the Government's case agent (FBI Special Agent Israel Camarillo) to testify at the August 21st hearing.[12]  Agent Camarillo was the officer who investigated the alleged spitting incident and drafted the Affidavit attached to the Government's Criminal Complaint.[13]

Defendant insists that Agent Camarillo's testimony is critical to three factors bearing on the Court's pretrial detention decision:

(1)     the "strength of the [G]overnment's case";

(2)     whether Defendant would pose a "danger to the community" if the Court let him out on bond; and

(3)     "whether [Defendant] is a flight risk"—that is, the likelihood that Defendant would abscond to avoid prosecution.[14]

Defendant specifically wants to question Agent Camarillo about:

(a)     "What witnesses [he] interviewed in order to determine that there is sufficient evidence to support" the Government's charges against Defendant;[15]

(b)     "The information [he] obtained from those witnesses";[16]

(c)     "Any video that [he] has watched" that would corroborate the Government's allegations;[17]

---

[12] 2d Am. Appl. at 3–4, 7.

[13] *See* Camarillo Aff. at 2–4.

[14] *See* 2d Am. Appl. at 3, 6; Def. Counsel Aff., ECF No. 57-1, at 3–4; *see also infra* Section II.B.1.

[15] *See* Def. Counsel Aff. at 3; *see also infra* Section II.C.1.

[16] *See* Def. Counsel Aff. at 3; *see also infra* Section II.C.1.

[17] *See* Def. Counsel Aff. at 3; *see also infra* Section II.C.2.

(d)    "Other available evidence to support the charges, if any exist[s]";[18]

(e)    Whether Defendant "forcibly assault[ed], resist[ed], oppose[d], impede[d], intimidate[d], or interfere[d] with" C.M.G.[19]—which is one of the elements that the Government must prove to successfully convict Defendant under 18 U.S.C. § 111(a)(1);[20]

(f)    "Any available information related to the question of whether [Defendant] is a current danger to the community";[21] and

(g)    "Any available information related to the question of whether [Defendant] is a flight risk."[22]

The Government opposes Defendant's Application.[23]

This isn't the first time that Defendant has asked this Court to subpoena Agent Camarillo; Defense Counsel previously filed a substantively identical Application on July 27, 2024.[24]  The Court denied the prior Application because Defense Counsel hadn't yet fully complied with the Department of Justice's "*Touhy*" regulations,[25] which establish procedures that a litigant must follow before calling a DOJ employee (such as an FBI agent) to testify in a judicial proceeding.[26]

---

[18] *See* Def. Counsel Aff. at 3; *see also infra* Section II.C.3.

[19] *See* 18 U.S.C. § 111(a)(1); Def. Counsel Aff. at 3–4; *see also infra* Section II.C.4.

[20] *See, e.g.*, *Hanson v. Kwiatkowski*, No. 3:19-CV-46, 2021 WL 4254865, at *6 (E.D. Tenn. Sept. 17, 2021).

[21] *See* Def. Counsel Aff. at 4; *see also infra* Section II.C.5.

[22] *See* Def. Counsel Aff. at 4; *see also infra* Section II.C.6.

[23] *See generally* Obj., ECF No. 58; *see also infra* notes 27–28 (explaining how the Government learned about Defendant's Application even though he filed it *ex parte*).

[24] *See* Am. Appl., ECF No. 52; *see also* Appl., ECF No. 50.

[25] *See* Order Denying Am. Appl., ECF No. 53, at 1–5.

[26] *See, e.g.*, *United States v. Archer*, No. 3:09-CR-59, 2010 WL 2633080, at *1 (E.D. Tenn. June 25, 2010) ("[T]he *Touhy* regulations . . . set up a procedure by which Department of Justice officials make decisions about whether an employee called upon to testify in litigation is permitted to disclose the requested information . . . .").

Specifically, a litigant seeking an agent's testimony must give the prosecuting attorney "an affidavit, or, if that is not feasible, a statement . . . setting forth a summary of the testimony sought."[27]  Defense Counsel has now given the prosecution the required affidavit[28] and filed a renewed Application.[29]

## II.    DISCUSSION

### A.    Federal Rule of Criminal Procedure 17(b)

Defendant bases his subpoena request on Federal Rule of Criminal Procedure 17(b),[30] which "governs an indigent[] [criminal defendant's] right to have witnesses[31] subpoenaed at Government expense."[32]  The Rule states that, "[u]pon a defendant's ex parte application, the

---

[27] *See* 28 C.F.R. § 16.23(c) ("If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.").

[28] *See* Def. Counsel Aff. at 3–4; *see also Touhy* Letter, ECF No. 57-1, at 1–2.

Because the Court ultimately denies the renewed Application for reasons unrelated to the *Touhy* regulations, *see infra* Section II.C, the Court assumes (without deciding) that the affidavit fully satisfied the applicable requirements under the *Touhy* regulations.

[29] *See generally* 2d Am. Appl.

[30] *See id.* at 4–6.

[31] A different rule—Federal Rule of Criminal Procedure 17*(c)*—governs subpoenas for *documents and objects* (as opposed to *oral testimony*).  *See* FED. R. CRIM. P. 17(c).  Because Defendant exclusively seeks "*testimony* from [Agent] Camarillo and does not seek the production of any document or material," *see* 2d Am. Appl. at 6 (emphasis added), it is Rule 17(b)—and not Rule 17(c)—that applies here.

[32] *E.g.*, *United States v. Webster*, 750 F.2d 307, 329 (5th Cir. 1984).

To the best of the Court's knowledge, the Fifth Circuit hasn't substantively analyzed Rule 17(b) in a published opinion since 1999.  *See United States v. Soape*, 169 F.3d 257, 267 (5th Cir. 1999).  Thus, out of necessity, the Court has relied heavily on decades-old opinions throughout this Order.

The Court is comfortable concluding, however, that those older cases remain good law.  *See, e.g.*, *United States v. Murray*, No. 19-118, 2020 WL 4785074, at *1 & nn.10–14 (E.D. La. Aug. 18, 2020) (2020 case continuing to rely on a Fifth Circuit opinion from the 1980s for propositions about Rule 17(b)).  Although Rule 17 has been amended several times since the Fifth Circuit issued those opinions,

court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees[33] and the necessity of the witness's presence for an adequate defense."[34]  If a court ultimately "orders a subpoena to be issued" under Rule 17(b), then any associated "process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas."[35]

"The decision to grant or deny a Rule 17(b) [application] is vested in the sound discretion of the trial court."[36]  Still, that "discretion is not absolute."[37]  "The breadth of the discretion to be exercised by the trial court under Rule 17(b) is considerably narrowed by two constitutional" principles:[38]

---

none of those amendments made substantive changes to Rule 17(b).  *See, e.g.*, FED. R. CRIM. P. 17(b) advisory committee's note to 2002 amendment ("The language of Rule 17 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules. These changes are intended to be stylistic only, except [for a change to an unrelated subsection of Rule 17].").

[33] Because the Court ultimately denies the Application for other reasons, *see infra* Section II.C, the Court assumes without deciding that Defendant has established that he's unable to pay the applicable witness fees.  *See* 2d Am. Appl. at 5 (making that argument); *cf.* Order Appointing Counsel, ECF No. 3, at 1 (finding that Defendant "is financially unable to employ counsel," which suggests that Defendant would likewise be unable to pay the requisite witness fees); *see also* Obj. at 1–8 (not challenging Defendant's assertion that he's unable to pay the applicable witness fees).

[34] FED. R. CRIM. P. 17(b).

[35] *Id.*

[36] *E.g.*, *Hegwood*, 562 F.2d at 952.

[37] *E.g.*, *United States v. Welsh*, 404 F.2d 414, 417 (5th Cir. 1968).

[38] *Id.*

  *See also, e.g.*, *Soape*, 169 F.3d at 267 ("We have generally given district courts wide discretion in determining whether subpoenas should issue under Rule 17(b), *but only within the limits imposed by the Constitution*." (emphasis added) (cleaned up)).

(1)    a criminal defendant's "Sixth Amendment right 'to have compulsory process for obtaining witnesses in his favor,'"[39] and

(2)    an indigent defendant's "Fifth Amendment right to protection against unreasonable discrimination[,] which means that, as between those financially able and those financially unable to pay the fees of the witness, there should be no more discrimination than is necessary to protect against abuse of process."[40]

## 1.    The Defendant's Threshold Burden Under Rule 17(b)

The defendant bears the initial burden to show that the requested witness's testimony is necessary for an adequate defense.[41]  To discharge that burden, the defendant "must state facts" in his Rule 17(b) application "that show the relevancy and necessity of the requested witness['s] testimony."[42]  Mere "general allegations regarding the necessity of [the] witness['s] testimony" do not suffice.[43]

---

[39] *E.g.*, *Welsh*, 404 F.2d at 417 (quoting U.S. CONST. amend VI).

*But see, e.g.*, *Soape*, 169 F.3d at 268 (emphasizing that "[t]he compulsory process right" under the Sixth Amendment "is not absolute" either).

[40] *E.g.*, *Welsh*, 404 F.2d at 417.

[41] *See* FED. R. CRIM. P. 17(b) ("[T]he court must order that a subpoena be issued for a named witness *if the defendant shows . . .* the necessity of the witness's presence for an adequate defense." (emphasis added)).

*See also, e.g.*, *Webster*, 750 F.2d at 329 ("*As a threshold matter*, an indigent seeking a Rule 17(b) subpoena must allege facts that, if true, demonstrate 'the necessity of the requested witness' testimony.'" (emphasis added) (quoting *Hegwood*, 562 F.2d at 952)); *Soape*, 169 F.3d at 268 ("[W]hen requesting a court to subpoena a witness, *a defendant has the duty* to demonstrate the necessity of the witness's testimony." (emphasis added)).

[42] *E.g.*, *United States v. Abshire*, 471 F.2d 116, 119 (5th Cir. 1972).

[43] *See United States v. Ramirez*, 765 F.2d 438, 441 (5th Cir. 1985).

When evaluating whether a defendant has carried his initial burden under Rule 17(b), the Court has discretion to deny the subpoena on various grounds.[44]  For instance, "[i]t is within the district court's discretion" to deny a Rule 17(b) application if the subpoena would serve only as a "fishing expedition"—that is, "an attempt to discover" *whether* a witness has any "information useful to the defense."[45]  Rule 17(b) is "not a discovery device," so the defendant must show that the witness *has* information necessary to his defense; not that the defendant *might obtain* information helpful to his defense if given the opportunity to question the witness in open court.[46]

### 2.    If the Defendant Satisfies His Initial Burden, the Burden Shifts to the Government

If the defendant satisfies his initial burden, the burden then shifts to the Government to show why the Court should deny the requested subpoena.[47]  The Government may carry that burden in various ways, such as by showing that:

---

[44] *See, e.g.*, *United States v. Moudy*, 462 F.2d 694, 697–98 (5th Cir. 1972) (remarking that Rule 17(b) "leaves broad discretion in the district court by allowing the trial judge to weigh numerous factors" when "deciding whether to grant [a] request for a subpoena").

[45] *See Ramirez*, 765 F.2d at 441.

[46] *E.g.*, *id.* (emphasis omitted) (quoting *Hegwood*, 562 F.2d at 952).

[47] *See, e.g.*, *id.* (holding that "the defendants failed to make the threshold requirement [sic] necessary to *shift the burden to the Government*" (emphasis added)).

As an aside, it's not obvious how the Government is supposed to carry that burden in the usual case.  Rule 17(b) was amended in 1966 to authorize defendants to apply for witness subpoenas *ex parte*— that is, without notice to the Government—so that indigent defendants could obtain subpoenas without revealing their defense strategy to the prosecution.  *See, e.g.*, FED. R. CRIM. P. 17 advisory committee's note to 1966 amendment; *United States v. Meriwether*, 486 F.2d 498, 505–06 (5th Cir. 1973).  But if the Government doesn't even *know* that the defendant has filed an *ex parte* application under Rule 17(b), it's unclear how the Government is supposed to carry its burden to oppose the *ex parte* application.  *See United States v. Gotti*, 784 F. Supp. 1011, 1013 (E.D.N.Y. 1992) (flagging that issue); *see also* 2d Am.

(1)    the facts alleged in the defendant's Rule 17(b) application are untrue;[48]

(2)    "the evidence sought is immaterial, irrelevant, cumulative or otherwise unnecessary";[49] or

(3)    the request is frivolous or amounts to an abuse of process.[50]

If the Government fails to carry its burden after it's been shifted to the prosecution, then the defendant's request for a subpoena "must be granted."[51]

---

Appl. at 5 n.2 (suggesting that the Government is supposed to carry its burden by moving to quash the Rule 17(b) subpoena after the Court has already issued it).

The Court need not resolve that conundrum now, however. The Government is fully aware of Defendant's Rule 17(b) Application here—even though Defendant filed it *ex parte*, *see* 2d Am. Appl. at 1—because Defense Counsel notified the Government of his intent to subpoena Agent Camarillo to comply with the *Touhy* regulations, *see supra* notes 27–28 and accompanying text. The Government has therefore had a meaningful opportunity to object to the Application, and it has in fact done so. *See* Obj.

Query, though, whether the *Touhy* regulations' requirement that a defendant give the prosecution "a summary of the testimony" he seeks from the witness defeats the entire purpose behind the 1966 amendment—namely, so that an indigent defendant doesn't have to "disclose in advance the theory of his defense in order to obtain the issuance of a subpoena." *Compare* 28 C.F.R. § 16.23(c), *with* FED. R. CRIM. P. 17 advisory committee's note to 1966 amendment.

[48] *See, e.g.*, *Webster*, 750 F.2d at 329 ("The trial court may . . . exercise its discretion to deny the subpoenas if the Government demonstrates that the indigent's averments are untrue . . . .").

[49] *E.g.*, *Soape*, 169 F.3d at 268.

[50] *See, e.g.*, *Hegwood*, 562 F.2d at 952 ("[T]he burden of showing lack of truth, frivolousness or abuse of process falls on the [G]overnment.").

[51] *E.g.*, *Welsh*, 404 F.2d at 417–18 (quoting *Greenwell v. United States*, 317 F.2d 108, 110 (D.C. Cir. 1963)).

*See also Moudy*, 462 F.2d at 697 (stating that it's "mandatory" to issue a Rule 17(b) subpoena in such circumstances).

**B.      Federal Rule of Criminal Procedure 17(b) in the Pretrial Detention Context**

Rule 17(b) isn't limited to subpoenaing witnesses to testify at a defendant's *trial*; in appropriate circumstances, a court may also subpoena a witness to testify at a defendant's *pretrial detention hearing*.[52]  As the Court now explains, though, there are special considerations that courts must consider when evaluating Rule 17(b) applications in the detention hearing context.

**1.      The Law Governing Pretrial Detention**

When deciding whether to detain or release a defendant pending trial, the Court must consider "whether any condition or combination of conditions" would:

(1)      "reasonably assure [Defendant's] appearance" at future proceedings in his criminal case; and

(2)      protect "the safety of any other person and the community."[53]

That in turn requires the Court to consider several statutorily-enumerated factors,[54] three of which are pertinent here:

---

[52] *See, e.g.*, *United States v. Patterson*, No. 20-1078, 2020 WL 2217262, at *1, *10 (D. Md. May 7, 2020) (analyzing whether to issue a Rule 17(b) subpoena commanding a witness to testify at the defendant's detention hearing).

[53] 18 U.S.C. § 3142(f).

[54] *See id.* § 3142(g)(1)–(4).

(a)    "the weight of the evidence against" the defendant;[55]

(b)    "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant]'s release;"[56] and

(c)    whether the defendant is a "flight risk" (that is, whether the defendant is likely to flee to avoid prosecution).[57]

## 2.    Restrictions on a Defendant's Right to Subpoena Adverse Witnesses to Testify at a Pretrial Detention Hearing

By statute, a defendant has the right "to *present* witnesses" to testify in his favor at his pretrial detention hearing.[58]  But that *doesn't* mean that a defendant has an unqualified right to *subpoena adverse* witnesses to testify at the detention hearing, as Defendant seeks to do here.[59]

---

[55] *See id.* § 3142(g)(2).

[56] *See id.* § 3142(g)(4).

[57] *See id.* § 3142(g)(3)(A) (instructing courts to consider the defendant's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings").

*See also, e.g.*, *United States v. Languerand*, No. 21-cr-353, 2021 WL 3674731, at *13 (D.D.C. Aug. 19, 2021) (noting that the § 3142(g)(3)(A) factors help the court "assess[] if [the defendant] is a flight risk").

[58] *See* 18 U.S.C. § 3142(f) (emphasis added).

[59] *See, e.g.*, *United States v. Sanchez*, 457 F. Supp. 2d 90, 92 (D. Mass. Oct. 17, 2006) ("[A] defendant has no absolute 'right' to subpoena adverse witnesses at a detention hearing."); *United States v. Flanders*, No. 2010-29, 2010 WL 4054442, at *4 (D.V.I. Oct. 15, 2010) ("[A] defendant does not have an unqualified right to call an adverse witness [at his detention hearing]."); *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986) ("The accused has no right to cross-examine adverse witnesses who have not been called to testify [at the detention hearing].").

### a.    A Pretrial Detention Hearing Isn't a Trial on the Merits

For one thing, because pretrial detention is a preliminary matter that courts must resolve quickly at the case's outset,[60] a court mustn't let a detention hearing devolve into a "mini-trial on the ultimate question of guilt."[61]  Courts therefore possess "broad discretion to limit the presentation of direct testimony . . . at a detention hearing"[62] to prevent the hearing from becoming a full-blown "trial on the merits."[63]

That's not to say, though, that a defendant may *never* introduce evidence bearing on the case's merits at a pretrial detention hearing.  As noted, "the weight of the evidence against" the defendant is one of the statutory factors that a court must consider when making pretrial detention decisions,[64] and an evaluation of the "weight of the evidence" necessarily entails a

---

[60] *See, e.g.*, *United States v. Accetturo*, 783 F.2d 382, 390 (3d Cir. 1986) ("Congress has determined that the need for speed in reaching pretrial detention determinations justifies the use of procedures less demanding than those applicable to a 'full-blown trial.'" (quoting *United States v. Delker*, 757 F.2d 1390, 1398 (3d Cir. 1985))); *Flanders*, 2010 WL 4054442, at *6 ("[T]he court must act expeditiously in determining whether to detain the defendant and not unnecessarily transform the bail hearing into a full-fledged trial or defendant's discovery expedition." (cleaned up)).

[61] *E.g.*, *United States v. Bundy*, No. 2:16-cr-00046, 2017 WL 81365, at *7 (D. Nev. Jan. 9, 2017); *United States v. Bibbs*, 488 F. Supp. 2d 925, 926 (N.D. Cal.), *motion to revoke Magistrate Judge's order denied*, 2007 WL 2212071 (N.D. Cal. July 30, 2007).

[62] *United States v. Hinkson*, No. 04-127, 2004 WL 7333644, at *2 (D. Idaho July 6, 2004).

*See also, e.g.*, *United States v. Lewis*, 769 F. Supp. 1189, 1192 (D. Kan. 1991) ("[T]he judicial officer conducting the detention hearing is given considerable discretion regarding the presentation of evidence.").

[63] *See, e.g.*, *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996).

[64] *See* 18 U.S.C. § 3142(g)(2); *see also supra* Section II.B.2.a.

preliminary assessment of the case's merits.[65]  Thus, it's sometimes necessary to give a

defendant at least *some* leeway to probe the case's merits at his pretrial detention hearing.

### b.    A Pretrial Detention Hearing Isn't a Discovery Device

When considering whether to let a defendant question adverse witnesses at a pretrial

detention hearing, the Court must also be careful not to let the defendant use the hearing as a

discovery device.[66]  A court may, for instance, prohibit a defendant from "presenting live

testimony from the [Government's] case agent[]" at his detention hearing if doing so "would

only serve as a 'fishing expedition' for discovery purposes."[67]

---

[65] *See, e.g.*, *United States v. Kelly*, No. 09-6037, 2009 WL 10698204, at *1 (S.D. Fla. Feb. 9, 2009) ("[A]lthough . . . a pretrial detention hearing is not a full-blown hearing nor a probable cause inquiry, 18 U.S.C. § 3142(g) makes clear that consideration of the weight of the evidence is not irrelevant. Instead, among the factors that the Court must take into account in determining whether detention is appropriate, Section 3142(g) specifies that the court must consider 'the weight of the evidence against the person.'"); *United States v. Hammond*, 44 F. Supp. 2d 743, 744–45 (D. Md. 1999) (emphasizing that, in the detention hearing context, "the evidence of guilt goes not just to the ultimate chance of conviction;" it "is also the key evidence on the dangerousness issue" for the purposes of 18 U.S.C. § 3142(g)(2)'s "weight of the evidence" inquiry).

[66] *See, e.g.*, *Lewis*, 769 F. Supp. at 1192 ("The courts appear to unanimously agree that a detention hearing is not a vehicle for discovery."); *Smith*, 79 F.3d at 1210 ("A pretrial detention hearing . . . is [not] a discovery device for the defense . . . ."); *United States v. Suppa*, 799 F.2d 115, 120 (3d Cir. 1986) ("A pretrial detention hearing is not intended to serve as a vehicle for discovery from the [G]overnment.").

[67] *United States v. Raymond*, No. 07-748, 2007 WL 9729140, at *3 (D.N.M. Nov. 25, 2007).

*See also, e.g.*, *Sanchez*, 457 F. Supp. 2d at 93–94 ("[T]he desire for discovery is simply not a sufficient basis under the law for allowing defense counsel to subpoena prospective government witnesses into court to testify at a detention hearing."); *Suppa*, 799 F.2d at 116–17, 120 (affirming lower court's decision to forbid defendant from questioning FBI agent at pretrial detention hearing about "the substance of the [G]overnment's case").

*But see United States v. Stone*, No. 10-20123, 2010 WL 1687038, at *1 (E.D. Mich. Apr. 26, 2010) (appearing to reach the opposite conclusion that a defendant "may compel the [Government's] case agent's testimony" whenever "the Government . . . opt[s] not to present the case agent as a witness at the [defendant's] detention hearing," but without analyzing or acknowledging the contrary authority holding that a court needn't let a defendant do so).

To ensure that defendants don't improperly use pretrial detention hearings as an occasion to grope blindly for information that could conceivably prove useful at trial,[68] many (though not all)[69] courts require the defendant to show *what* he expects the adverse witness will say on the stand—as well as *how* that testimony will help him—before compelling that witness to testify.[70] The defendant must "describe with . . . particularity what useful information he . . . hope[s] to elicit from" the subpoenaed witness at the hearing.[71]  The defendant "must do more than offer generalities" and "conclusory statements" about why he needs the adverse witness's testimony;[72]

---

[68] *See, e.g.*, *Bundy*, 2017 WL 81365, at *9 ("[The defendant must] first make a specific proffer to the court of how the witnesses' testimony will negate the [G]overnment's contention that the defendant is a danger to the community, or will rebut the presumption created by the statute that the defendant should be detained.  *This requirement is necessary to prevent the detention hearing from developing into a mini-trial or from being used as a discovery device.*" (emphasis added) (cleaned up)).

[69] The Eleventh Circuit gives the trial court the *discretion* to require the defendant to explain in advance how the adverse witness's testimony will assist his defense, but it does not affirmatively *require* lower courts to impose any such requirement.  *See United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987) ("We . . . do *not* adopt the. . . requir[ement that the defendant] initially proffer to the court in detail how an adverse witness's testimony is expected to negate [the Government's evidence in favor of detaining the defendant] as a prerequisite to calling such witness.  The legislative history [of the pretrial detention statute] compels a finding that the judicial officer presiding at the detention hearing is vested with the *discretion* whether to allow defense counsel to call an adverse witness *with or without* an initial proffer of the expected benefit of the witness's testimony." (emphases added)).

[70] *See, e.g.*, *United States v. O'Neal*, No. 3:08-CR-107, 2009 WL 1789078, at *1 (E.D. Tenn. June 23, 2009) (explaining that a defendant seeking to subpoena a witness to testify at his detention hearing must "provide a summary of the witness's proposed testimony" so that the court may "determine the witness's relevance to the defense").

[71] *See United States v. Pasciuti*, No. 92-1112, 1992 WL 51482, at *6 (1st Cir. Mar. 19, 1992).

*See also, e.g.*, *United States v. Cabrera-Ortigoza*, 196 F.R.D. 571, 574 (S.D. Cal. 2000) (requiring the defendant to describe, "in reasonable detail," "what [the] witness[] would say" if called to testify at the detention hearing (cleaned up)).

[72] *See, e.g.*, *O'Neal*, 2009 WL 1789078, at *1–2.

- 15 -

instead, he must articulate why he believes that the adverse witness would either "give evidence favorable to" the defendant or "retract information harmful to" him.[73]

## C.    The Court Denies Defendant's Application to Subpoena Agent Camarillo

In light of the foregoing principles, the Court will exercise its "wide discretion" to deny Defendant's Rule 17(b) Application here.[74]  Although Defendant has at least informed the Court and the Government what he wants to *ask* Agent Camarillo at the detention hearing, he hasn't told the Court what he expects Agent Camarillo to *say* in response, or *why* he thinks that Agent Camarillo will say something that will help him.[75]  Thus, Defendant hasn't carried his initial burden to show that Agent Camarillo's testimony is necessary to mount an adequate defense.[76] Compelling Agent Camarillo to testify at Defendant's detention hearing would instead improperly allow Defendant to use the hearing as a discovery vehicle or transform the hearing into a mini-trial on the merits.[77]

---

[73] *See Accetturo*, 783 F.2d at 388.

*See also, e.g.*, *Sanchez*, 457 F. Supp. 2d at 93 (holding that a defendant seeking to compel an adverse witness to testify at a pretrial detention hearing "must give the Court some basis for believing that the witness would produce testimony favorable to" the defendant); *Cabrera-Ortigoza*, 196 F.R.D. at 574 (stating that "[t]he judicial officer presiding at the detention hearing" need not "allow defense counsel to call adverse witnesses" absent "a proffer from the defendant that" the information the Government has proffered in support of its motion to detain the defendant "is incorrect").

[74] *See, e.g.*, *Ramirez*, 765 F.2d at 441.

[75] *See, e.g.*, Def. Counsel Aff. at 3–4.

[76] *See supra* Section II.A.1.

[77] *See supra* Section II.B.2.

1.    **Which Witnesses Agent Camarillo Interviewed During His Investigation (And What Those Witnesses Said)**

Defendant first plans to ask Agent Camarillo to divulge "[w]hat witnesses [he] interviewed in order to determine that there is sufficient evidence to support the[] charges" against him, as well as "[t]he information that was obtained from those witnesses."[78]  Defendant presumably seeks to ask those questions to probe the thoroughness of Agent Camarillo's investigation for the purposes of the statute's "weight of the evidence" factor.[79]

But Defendant doesn't indicate *what he expects Agent Camarillo to say* in response to those questions.[80]  The Court thus has no reason to think that Agent Camarillo would say anything that would help Defendant—and, thus, no reason to believe that Agent Camarillo's testimony is necessary to an adequate defense.[81]

It instead appears that Defendant wants to use the requested subpoena to probe *whether* Agent Camarillo has any information that isn't already recounted in the Affidavit attached to the

---

[78] *See* Def. Counsel Aff. at 3.

[79] *See supra* Section II.B.1.

[80] *See* Def. Counsel Aff. at 3.

*See also, e.g.*, *Abshire*, 471 F.2d at 119 ("The rule in this Circuit is clear that a Rule 17(b) [application] must *state facts* that show the . . . necessity of the requested witness['s] testimony." (emphasis added)); *Cabrera-Ortigoza*, 196 F.R.D. at 574 (requiring the defendant to describe, "in reasonable detail," "what [the] witnesses would say" if called to testify at the detention hearing (cleaned up)); *see also supra* Section II.B.2.b.

[81] *See, e.g.*, *Sanchez*, 457 F. Supp. 2d at 93 (holding that a defendant seeking to subpoena an adverse witness to testify at a pretrial detention hearing "must give the Court some basis for believing that the witness would produce testimony favorable to" the defendant); *see also supra* Section II.A.1.

Criminal Complaint.[82]  That's exactly the sort of "fishing expedition" that courts should exercise their discretion to prevent.[83]

### 2.    Whether Agent Camarillo Reviewed Any Video Evidence

The same goes for Defendant's plan to ask Agent Camarillo whether he's reviewed "[a]ny video . . . that support[s] the case brought by the [G]overnment."[84]  Defendant doesn't establish, for instance, that there's surveillance footage that exonerates him of any wrongdoing, and that Defense Counsel will be able to get Agent Camarillo to admit on the stand that he didn't watch that footage before drafting his Affidavit.[85]  It instead appears that Defendant seeks to explore *whether* any video of the alleged incident exists, *whether* that video helps Defendant, and *whether* Agent Camarillo has watched that video.[86]  That too would amount to an impermissible fishing expedition.[87]

### 3.    Whether Any Other Evidence Supporting the Charge Exists

Defendant also wants to ask Agent Camarillo about "[o]ther available evidence to support the charges, *if any exist[s]*."[88]  That italicized phrase indicates that Defendant *doesn't know* whether any such evidence exists, and that he's trying to use the detention hearing to figure that out.  That, again, would be improper.[89]

---

[82] *See* Def. Counsel Aff. at 3; *see also* Camarillo Aff. at 3–4.

[83] *See supra* Section II.B.2.b.

[84] *See* Def. Counsel Aff. at 3.

[85] *See id.*

[86] *See id.*

[87] *See supra* Section II.B.2.b.

[88] *See* Def. Counsel Aff. at 3 (emphasis added).

[89] *See supra* Section II.B.2.b.

### 4.    The Merits of the Case

Defendant also wants to ask Agent Camarillo "[w]hether C.M.G[.] was" "[f]orcibly assaulted," "[r]esisted," "[o]pposed," "[i]mpeded," "[i]ntimidated," or "[i]nterfered with"[90]—which is one of the elements of the charged offense.[91]  Defendant presumably intends that line of questioning to probe "[t]he strength of the Government's case,"[92] which (to reiterate) bears on the "weight of the evidence" factor that the Court must consider when making its detention decision.[93]  For the reasons discussed above, the Court must therefore weigh Defendant's need to present evidence bearing on the "weight of the evidence" against the countervailing need to prevent the detention hearing from devolving into a mini-trial on the merits.[94]

The latter concern is weightier here.  Defendant gives the Court no reason to think that Agent Camarillo would say anything on the stand different than what he previously said in his Affidavit[95]—namely, that Defendant forcibly assaulted C.M.G. by spitting on him.[96]  The Court thus has no reason to think that Agent Camarillo would say anything about the weight of the

---

[90] *See* Def. Counsel Aff. at 3–4.

[91] *See, e.g.*, *Hanson*, 2021 WL 4254865, at *6.

[92] *See* Def. Counsel Aff. at 3.

[93] *See supra* Section II.B.1.

[94] *See supra* Section II.B.2.a.

[95] *See* Def. Counsel Aff. at 3–4.

[96] *See* Camarillo Aff. at 3.

*See also, e.g.*, *Lehi*, 446 F. App'x at 100 (holding that "spit[ting on] . . . a federal officer who was engaged in . . . official duties" constitutes "a forcible assault involving physical contact in violation of 18 U.S.C. § 111(a)").

evidence that would actually help Defendant.[97]  Thus, the need to prevent the *de novo* detention

hearing from becoming a mini-trial on the ultimate issue in this case (namely, whether Defendant

did in fact forcibly assault C.M.G. by spitting on him) outweighs whatever speculative benefit

Defendant might derive from questioning Agent Camarillo in open court.[98]

     **5.      Information Regarding Whether Defendant Is a Danger to the Community**

     Defendant also seeks to ask Agent Camarillo whether there's "[a]ny available

information related to the question of whether [Defendant] is a current danger to the

community."[99]  That too is one of the factors the Court must consider when deciding whether to

detain Defendant pending trial.[100]  Here too, though, Defendant gives the Court no reason to

think that Agent Camarillo actually has any such information, or that any of the information

Agent Camarillo has would help Defendant rather than hurt him.[101]  Defendant instead appears to

---

[97] *See, e.g.*, *Sanchez*, 457 F. Supp. 2d at 93 (holding that a defendant seeking to subpoena an adverse witness to testify at a pretrial detention hearing "must give the Court some basis for believing that the witness would produce testimony favorable to" the defendant).

[98] *See, e.g.*, *United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992) (opining that a "defendant may not use a pretrial detention hearing as a trial on the underlying indictment"); *see also supra* Section II.B.2.a.

[99] *See* Def. Counsel Aff. at 4.

[100] *See supra* Section II.B.1.

[101] *See* Def. Counsel Aff. at 4.

     *Cf., e.g.*, *United States v. Carino*, No. 2016-0008, 2016 WL 6023099, at *7 (D.V.I. Oct. 13, 2016) (rejecting the defendant's "argument that the [c]ourt erred in allowing the detention hearing to proceed without the testimony of a live Government witness" where the defendant "proffered no evidence showing that cross-examination" of the Government's witness "would have revealed evidence supporting a finding that" the defendant was "not . . . a danger to the community").

be attempting to use Rule 17(b) to discover whether any such information exists.[102]  That, to reiterate, would be an impermissible fishing expedition.[103]

### 6.    Information Regarding Whether Defendant is a Danger to the Community

Nor, for the same reason, will the Court permit Defendant to call Agent Camarillo to the stand to probe whether there's "[a]ny available information related to the question of whether [Defendant] is a flight risk."[104]

### 7.    Conclusion

In sum, Defendant has failed to carry his initial burden to show that Agent Camarillo's testimony is necessary for an adequate defense.[105]  The Court will therefore exercise its discretion to deny his Rule 17(b) Application.[106]  The Court will not permit Defendant to call Agent Camarillo to the stand at the August 21, 2024 *de novo* detention hearing—even if Agent Camarillo is physically present at that hearing.[107]

---

[102] *See* Def. Counsel Aff. at 4.

[103] *See supra* Section II.A.1 & B.2.b.

[104] *Contra* Def. Counsel Aff. at 4.

*Cf., e.g.*, *Carino*, 2016 WL 6023099, at *7 (rejecting the defendant's "argument that the [c]ourt erred in allowing the detention hearing to proceed without the testimony of a live Government witness" where the defendant "proffered no evidence showing that cross-examination" of the Government's witness "would have revealed evidence supporting a finding that" the defendant was "not a flight risk").

[105] *See supra* Section II.A.1.

[106] *See supra* Section II.A.1.

[107] *See Gaviria*, 828 F.2d at 669–70 (11th Cir. 1987) (affirming lower court's refusal to permit the defendants to "call the government case agent . . . as a witness" at their pretrial detention hearing—even though the agent was already physically "present at the hearing").

*See also* Obj. at 2 (noting that Agent Camarillo "was physically present seated next to government counsel" at the initial July 11, 2024 detention hearing before Judge Torres); 2d Am. Appl. at 2–3 (same).

## III.    CONCLUSION

The Court therefore **DENIES** Defendant's "*Ex Parte* Second Amended Motion for Issuance of Witness Subpoena for Israel Camarillo" (ECF No. 57).

Although Defendant filed his Application *ex parte* and under seal,[108] the Court will **NOT** docket this Order *ex parte* or under seal.  The Government is already fully aware of the Application and the relief that Defendant seeks,[109] so filing this Order *ex parte* would serve no purpose but to leave the Government guessing whether the Court had in fact rejected Defendant's request to subpoena Agent Camarillo.

**So ORDERED and SIGNED this 19th day of August 2024.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[108] *See* 2d Am. Appl. at 1.

[109] *See supra* notes 27–28 and accompanying text.